**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**EXPRESS OIL CHANGE, LLC, and**
**TE, LLC d/b/a TIRE ENGINEERS**                                           **PLAINTIFF**

**vs.**                                   **CIVIL ACTION NO.: 3:16-CV-414-HTW-LRA**

**MISSISSIPPI BOARD OF**
**LICENSURE FOR PROFESSIONAL**
**ENGINEERS AND SURVEYORS, et al.**                       **DEFENDANTS**

---

**ORDER**

---

BEFORE THIS COURT is the *Motion for Attorneys' Fees* **[Docket no. 60]** filed by Plaintiffs Express Oil Change, LLC and TE, LLC d/b/a Tire Engineers (hereinafter collectively referred to as "EOC[1]"). After a careful review of the submissions of the parties and the relevant legal precedent, this court is convinced that EOC's Motion for Attorneys' Fees should be granted, but with reductions. Below, this court sets out the facts and law upon which this court has based its ruling.

## I.        BACKGROUND

The Mississippi Legislature has prohibited any person or businesses from using the term "engineer" in a commercial identification, title, or name, unless the proponent is licensed to perform engineering services by the Mississippi Board of Licensure for Professional Engineers and Surveyors

---

[1] Although this Court refers to Plaintiffs collectively as "EOC" herein, various direct quotes taken from the parties' memorandum briefs identify the Plaintiffs as "Tire Engineers".

(hereinafter referred to as "the Board"). Miss. Code. Ann. §§ 73-13-1[2]; 73-13-39[3].  In 2015, EOC undertook to change the name of its trade name and service mark to "Tire Engineers".  In February 2015, the Board notified EOC that its use of the name "Tire Engineers" violated §73-13-39 and directed EOC to cease using its trade name and service mark in Mississippi.

Thereafter, EOC and the Board met in a series of meetings, with each party attempting to persuade the other to abandon its position.  These meetings proved unsuccessful. After the Board issued its final decision prohibiting EOC's use of the term "engineer" under § 73-13-39, EOC filed suit in this court, seeking declaratory judgment and related relief, alleging, among other things, that the Board's action violated EOC's free speech rights as guaranteed by the First Amendment to the United States Constitution[4]. [Docket nos. 1 and 8].

---

[2] Miss. Code Ann. § 73-13-1: In order to safeguard life, health, and property, and to promote the public welfare, any person or firm in either public or private capacity practicing or offering to practice engineering shall hereafter be required to submit evidence that the person or firm is qualified so to practice engineering and shall be licensed as hereinafter provided; and it shall be unlawful for any person or firm to practice or to offer to practice in this state, engineering, as defined in the provisions of Sections 73-13-1 through 73-13-45, or to use in connection with his name or otherwise assume, use, or advertise any title or description tending to convey the impression that he is a professional engineer, unless such person has been duly licensed under the provisions of Sections 73-13-1 through 73-13-45…"There is specifically reserved to engineering graduates of all universities and colleges accredited by a regional accrediting body that is recognized by the United States Department of Education, the right to disclose any college degrees received by such individuals and use the words "graduate engineer" on his stationery, business cards and personal communications of any character.

[3] Miss. Code Ann. §73-13-39: Unless licensed in accordance with the provisions of Sections 73-13-1 through 73-13-45, no person shall: (a) Directly or indirectly employ, use, cause to be used or make use of any of the following terms or any combinations, variations or abbreviations thereof as a professional, business or commercial identification, title, name, representation, claim, asset or means of advantage or benefit: "engineer," "professional engineer," "licensed engineer," "registered engineer," "registered professional engineer," "licensed professional engineer," "engineered," "engineering". . .

[4] The First Amendment to the United States Constitution guarantees, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

The parties, relying upon Rule 56[5] of the Federal Rules of Civil Procedure, filed cross-motions for summary judgment at the close of the discovery period. [Docket nos. 22 and 25].  EOC also filed a motion in limine to exclude the testimony of the Board's expert witness, Jerry Lindsley [Docket no. 24].  The Board responded by filing a motion to strike a portion of the summary judgment affidavit submitted by EOC executive, Josh Henderson. [Docket no. 32].

This court conducted public hearings on these motions, whereas all parties were present and permitted to participate in oral arguments.  Subsequently, in February 2018, this court entered a judgment denying EOC's motions and granting summary judgment in favor of the Board. [Docket no. 51].

EOC appealed this court's decision to the Court of Appeals for the Fifth Circuit.  EOC's appeal relied solely upon the First Amendment issue. That issue is summarized as follows: whether the Board's prohibition on EOC's use of the term "engineer" violated EOC's rights of commercial free speech guaranteed by the First Amendment[6]. The Fifth Circuit, on February 19, 2019, held that EOC enjoyed only limited First Amendment protections, because, said the Fifth Circuit,  EOC's use of the term "engineers" was not inherently or actually misleading[7]. The Fifth Circuit further held that the Board failed to meet its burden to show that using less-restrictive regulation than a total ban on EOC's use of the term "engineers" would not serve the Board's interest in promoting accurate commercial marketplace information, and in maintaining professional ethical standards relied upon

---

[5] Rule 56(a) of the Federal Rules of Civil Procedure states in pertinent part**: "**A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law…."

[6] *Express Oil Change, LLC v. Miss. Bd. of Licensure for Professional Engineers and Surveyors*, 916 F.3d 483, 486 (5th Cir. 2019).

[7] *Id.* at 488-491.

by the public. The Court, therefore, reasoned that the Board's determination violated EOC's First Amendment rights. [8]

The Fifth Circuit rendered judgment in favor of EOC, reversing this court's grant of summary judgment in favor of the Board. [Docket no. 59]. Thereafter, EOC timely moved for an award of attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988[9].

## II.    LEGAL STANDARD

EOC brings its Motion for Attorneys' Fees before this court pursuant to Title 42 U.S.C. §1988, which provides in relevant part that, "[i]n any action or proceeding to enforce a provision of [§1983,]…the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…" The purpose of §1988 is to ensure "effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstance would render such an award unjust'. *Hensley v. Eckerhart,* 461 U.S. 424, 43, 103 S.Ct. 193 3, 1941, 76 L.Ed 2d 40, 48 (1983). The U.S. Supreme Court in *Henley* emphasized, however, that the amount to be awarded under § 1988 necessarily depends on the facts of each case, and that the exercise of discretion by the district court must be respected. *Id.*

---

[8] *Id.* at 491-493.

[9] 42 U.S.C.A. § 1988 (b) states, "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." !
42 U.S.C.A. § 1988 (West)

In determining attorneys' fees, this court must follow Fifth Circuit precedent by calculating a "lodestar" fee, approached "by multiplying the reasonable number of hours expended on a case by the reasonable hourly rates for the participating lawyers." *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *Id.* In making a lodestar adjustment, the court should look to twelve (12) factors, known as the *Johnson* factors[10], named after *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

---

[10] (1) The time and labor required. Although hours claimed or spent on a case should not be the sole basis for determining a fee, *Electronics Capital Corp. v. Sheperd,* 439 F.2d 692 (5th Cir. 1971), they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

(2) The novelty and difficulty of the questions. Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

(3) The skill requisite to perform the legal service properly. The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration.

(4) The preclusion of other employment by the attorney due to acceptance of the case. This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes.

(5) The customary fee. The customary fee for similar work in the community should be considered. It is open knowledge that various types of legal work command differing scales of compensation. At no time, however, should the fee for strictly legal work fall below the $20 per hour prescribed by the Criminal Justice Act, 18 U.S.C.A. § 3006A(d)(1), and awarded to appointed counsel for criminal defendants. As long as minimum fee schedules are in existence and are customarily followed by the lawyers in a given community, they should be taken into consideration.

(6) Whether the fee is fixed or contingent. The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. But as pointed out in *Clark v. American Marine, supra,* [t]he statute does not prescribe the payment of fees to the lawyers. It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable. 320 F.Supp. at 711. In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount.

With respect to a determination of the nature and extent of the services supplied by the attorney, the burden is upon the party requesting fees to demonstrate the reasonableness of the number of hours expended. *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987). "[T]he burden of proof of reasonableness of the number of hours is on the fee applicant . . . and not on the opposing party to prove their unreasonableness." *Id.* (internal citation omitted).

"When…the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee[.]" *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548, 79 L. Ed. 2d 891 (1984). The United States Supreme Court has held:

---

(7) Time limitations imposed by the client or the circumstances. Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings.

(8) The amount involved and the results obtained. Title VII, 42 U.S.C.A. § 2000e-5(g), permits the recovery of damages in addition to injunctive relief. Although the Court should consider the amount of damages, or back pay awarded, that consideration should not obviate court scrutiny of the decision's effect on the law. If the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted.

(9) The experience, reputation, and ability of the attorneys. Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience. Longevity *per se*, however, should not dictate the higher fee. If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar.

(10) The "undesirability" of the case. Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant. *See NAACP v. Button*, 371 U.S. 415, 443, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Sanders v. Russell*, 401 F.2d 241 (5th Cir. 1968). Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court.

(11) The nature and length of the professional relationship with the client. A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. The Court may appropriately consider this factor in determining the amount that would be reasonable.

(12) Awards in similar cases. The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714,717–19(5th Cir. 1974)(citations omitted).

> The "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a "strong presumption" that the lodestar represents the "reasonable" fee, *Delaware Valley I, supra*, 478 U.S., at 565, 106 S.Ct., at 3098, and have placed upon the fee applicant who seeks more than that, the burden of showing that "such an adjustment is necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (emphasis added).

*City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992).

A court must then determine the reasonableness of hours presented by "weighing the hours claimed against [the judge's] own knowledge, experience, and expertise of the time required to complete such activities." *McClain v. Lufkin Indus. Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). Further, the court should reduce the hours claimed to eliminate "all time that is excessive, duplicative or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

As articulated by the Court in *Hensley*, in §1988 matters, the district court must have a broad "zone of discretion" in resolving disputes. 461 U.S. at 442 (citations omitted). The court's goal is not to obtain mathematical precision; rather, the court's ruling is sufficient if the court "has articulated a fair explanation" for its award after reviewing the request and the supporting documentation and applying its own experience and common sense. *Id*. at 455.

### III.    EOC's MOTION FOR ATTORNEYS' FEES

EOC's Motion for Attorneys' Fees [Docket no. 160] seeks an award of **$316,362.50** in attorney fees for a total of 1,259.3 hours of work. EOC submitted its Motion for Attorney Fees along with exhibits, which list its requested attorney fees and costs.[11] These submitted declarations and the time records purport to "confirm the necessity and reasonableness of the time spent by each attorney and the distinct contribution made by each person." [Docket no. 66, p. 4, ¶ 3].

---

[11] Exhibits include: 60-1 "Declaration of R. David Kaufman"; 60-2 "Declaration of Michael J. Bentley"; and 60-3 "Declaration of Michael J. Douglas".

The Board, on the other hand, does not postulate an alternate definitive lodestar figure for this court to contemplate; rather, says the Board, the maximum loadstar that the court should award is **$100,000.00**. [Docket no. 64]. The Board's opposition brief focuses entirely on the reasonableness of the total hours claimed by EOC's counsel. The Board asks this court to disallow or reduce EOC's claimed hours for: "excessive billing and duplication of effort by multiple counsel; time spent on matters pre-dating the litigation; work spent on the fee application itself; travel time subject to a reduced rate, and miscellaneous inaccurate or inconsistent time entries". [Docket no. 64 at p. 6].

The parties herein agree on three points: (1) EOC is entitled to an award of attorneys' fees under Title 42 U.S.C. § 1988 as the prevailing party; (2) the hourly rates claimed by EOC's attorneys are reasonable for this litigation based on the prevailing market rates in this district; and (3) there is no basis for reducing or increasing the lodestar fee award based on the *Johnson* factors. [Docket nos. 61, 64, and 66].

EOC further agrees with three of the Board's proposed reductions [Docket no. 66, p.2]:

(1) Compensating travel at half of the applicable rates is appropriate under this court's precedent; accordingly, the fee request is reduced by $16,320.00;

(2) Requests for compensation of miscellaneous time entries marked as "Q" for "questionable" in the exhibit to the Board's opposition brief [Docket no. 64-2] are waived, reducing the fee request by $4,535.00; and

(3) EOC's compensation claim for time spent considering and agreeing to a time extension [Docket no. 64-2, entries marked with an "E"] is waived, reducing the fee request by $652.00.

The sum of these voluntary reductions is $21,507.50. [Docket no. 66, p. 3]. Applying these voluntary reductions, EOC, in its Reply in Support of Motion for Attorneys' Fees [Docket no. 66],

8

seeks a reduced final award of **$294,855.00**.

This court has noted EOC's concessions while conducting its analysis; however, the court has an independent duty to review and scrutinize the reasonableness of the hours that are claimed even where no objection to specific hours is made. *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987). Accordingly, this court begins its examination by determining the proper lodestar calculation.

### A. <u>The Lodestar Calculation</u>

EOC offers the following chart in support of its lodestar calculation:

| Attorney Name & Title | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Steve Wilson**<br>    Partner – Bradley Arant Boult Cummings LLP | 41.9 | $375 | $15,712.50 |
| **Michael Bentley**<br>    Partner – Bradley Arant Boult Cummings LLP | 241.1 | $325 | $78,357.50 |
| **Simon Bailey**<br>    Associate – Bradley Arant Boult Cummings LLP | 61.1 | $225 | $13,747.50 |
| **Joe Leak**<br>    Shareholder – Leak Douglas & Morano, PC | 105 | $250 | $26,250.00 |
| **Michael Douglas**<br>    Shareholder – Leak Douglas & Morano, PC | 793.8 | $225 | $178,605.00 |
| **Spence Morano**<br>    Shareholder – Leak Douglas & Morano, PC | 16.4 | $225 | $3,690.00 |
| **TOTAL** | 1,259.3 | | $316,362.50 |

When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court will consider this rate when fixing the hourly rate to be allowed. Moreover, when that rate is not contested, it is prima facie reasonable. *Louisiana Power & Light Co.* 50 F.3d 319, 328.

EOC asserts the hours it has claimed and the hourly rates it charged are reasonable and consistent with other cases in this region. The Board, as stated above, does not challenge the hourly rates as presented to this court by EOC. This court, therefore, finds the hourly rates offered by EOC's various attorneys to be reasonable.

### 1. Duplication of Effort and Excessive Time Claimed

EOC offers the hourly rates and time expended by six attorneys in support of its fee application. As stated in *Johnson*, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d at 717. The United States Supreme Court has said, "[t]he Court's "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice,* 563 U.S. 826 (2011). In *Payne v. University of Southern Mississippi* , for example, the court declined "to comb through eighty-four pages of billing entries and guess the amount of extra time that was expended on each one." *Id.,* 2016 WL 698130 *2 (S.D. Miss. Feb. 19, 2016).

This court, similarly, is not required to pour over the ***92-page*** submission[12] by EOC's attorneys to guess the amount of extra time that was expended on each task; nor is the Court required to recalculate every item that is duplicative or excessive. This court, nonetheless, has undertaken the task of scrutinizing and clarifying as much of the proposed time entries as possible in order to illustrate clearly its ruling herein. In its examination, this court notes that EOC offers no evidence

---

[12] The Board submitted a marked copy of EOC's itemized detail of attorney fees and expenses [Docket no. 64-2]. This copy is attached to its Memorandum. [Docket no. 64]. The Board's markings indicate various problems with EOC's entries, as seen by the Board. This Court hereby makes this attachment [Docket no. 64-2] an EXHIBIT of this Order.

of time allotted to specific tasks[13]; rather, EOC's submitted time entries contain, which only general description of work performed by EOC's various attorneys. The court, therefore, must look to the specific "task categories" as identified by the Board and makes its own determination regarding the reasonableness of those categories.

First, the Board indicates that EOC's attorneys engaged in "block billing" for many of its time entries. Fifth Circuit precedent, however, is clear that "block billing", while disfavored, is not an automatic reason to deny an award of attorneys' fees.

> The ability to assess the reasonableness of a fee request is greatly undermined by the practice of billing multiple discrete tasks under a single time designation—so-called "block-billing." This practice was heavily utilized by Plaintiffs' counsel in this case. We have held that a party seeking an attorneys' fee award must produce documentation that is "sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Gagnon v. United Technisource, Inc*., 607 F.3d 1036, 1044 (5th Cir. 2010); *La. Power & Light Co*., 50 F.3d at 325 (supporting documentation must be "adequate to determine reasonable hours"). At first blush, block-billing appears to be in tension with this standard, as district courts must not only assess whether the total amount of time spent is reasonable, but also "whether the particular hours claimed were reasonably expended." *La. Power & Light Co*., 50 F.3d at 325 (emphasis added). Nevertheless, we have stated that "failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Gagnon*, 607 F.3d at 1044.

> The upshot of this jurisprudence is that litigants take their chances in submitting fee requests containing block-billed entries and will have no cause to complain if a district court reduces the amount requested on this basis. *See, e.g., Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format."); *Lahiri v. Univ. Music & Video Dist. Corp*., 606 F.3d 1216, 1223 (9th Cir. 2010) (affirming reduction of 30 percent for block-billed entries).

*DeLeon v. Abbott*, 687 F. App'x 340, 346 (5th Cir. 2017).

---

[13] The Board has categorized EOC's time submissions, as follows:
PL- Pre-Litigation; C- Complaint; CM- Case Management; U- Client Updates; D/DR: Discovery/Discovery Responses; E- Extension Request; P- Protective Order; SJ- Summary Judgment; AB/RB/OAP: Appellate Brief/Response Brief/Oral Arguments Preparation; T- Travel; and Q- Questionable.

This court is persuaded that EOC's requested attorneys' fee entries which are "block billed" do not give this court the requisite specificity required to determine whether the time spent was "reasonably expended" in prosecuting EOC's case.  This court has identified numerous examples of "block billing" under each category of tasks performed by EOC's attorneys. A few such examples are listed below:

In time submissions to this court, Michael Bentley, EOC's lead local attorney, billed 10.4 hours on December 3, 2018 for the following:

> Final preparations for oral argument- review and revise argument outline, review key authorities, revise answers to potential questions, travel to New Orleans for argument and meet with M. Dougals and J. Leak regarding argument strategy.

[Docket no. 64-2, p. 29]. Mr. Bentley does not explain what amount of time was spent traveling; whether any of the "final preparations" were conducted en route to New Orleans; or the amount of time spent meeting with co-counsel on this matter. At $325 per hour, this time entry alone accounts for $3,412.50 billed.

In another example, Joe Leak billed 7.8 hours for the following on November 14, 2018:

> Meeting with Michael Bentley to prepare for oral argument and return to Birmingham, AL; prepare notes from meeting for further preparations.

[Docket no. 64-2, p. 58]. Mr. Leak's time claimed, at $250 per hour, amounts to a bill of $1,950.00.

In yet another example, Michael Douglas billed 1.6 hours on May 11, 2016 for the following:

> Correspondence with MSPBE regarding final board decision; Telephone conferences regarding same; Telephone conference with client regarding same; Drafted status update.

[Docket no. 64-2, p. 33]. The above quoted entries are only a fraction of the time entries from EOC's submission that qualify as "block billing".

Accordingly, this court finds that EOC has not provided this court with a record of its time spent on this litigation with the requisite specificity and must, therefore, reduce EOC's requested

attorney fees. In order to determine the appropriate reduction to EOC's lodestar to account for "block billing", this court looks to each category of tasks performed by EOC. Each of the categories, as listed below, contains examples of "block billing".

This court begins by addressing the Board's specific objections on the grounds of duplication of effort/excessive time:[14] as stated in the Board's Opposition Memorandum [Docket no. 64], hereafter discussed in topics (a) through (h), (under each topic (a) through (h), the court has quoted the Board's specific objections):

a) COMPLAINT: "Three attorneys – Michael Douglas, Steve Wilson, and Michael Bentley – spent a combined 34.4 hours preparing and filing the ten-page complaint with supporting affidavit and exhibits. This amount is particularly excessive given that Tire Engineers' counsel Michael Douglas filed the almost identical federal complaint against the Texas board prior to filing the complaint in this matter. Demonstrative of work duplication, both Michael Bentley and Michael Douglas have time entries on June 2, 2016, indicating that they filed the complaint.  The fees requested for this…task total $8,100[15]. Michael Bentley and Steve Wilson later spent 5.8 hours, for a total of $1,735, amending the complaint (including research and discussions)… to substitute the individual Board members as defendants instead of the Board itself, which is protected by Eleventh Amendment immunity. These entries have been marked with the letter "C" on the time sheets presented by Tire Engineers's lawyers in support of their fee application.."

The Board attaches for review the Complaint in Case No. 1:16-cv-00638-LY [Docket no. 64-1].

In response to this attack, EOC contends that it was working on the Mississippi Complaint and Texas Complaint simultaneously; and that the Texas Complaint was filed only two days before the Complaint in this matter was filed. [Docket no. 66, p. 5].

Although the complaints in the two cases are similar, says EOC, they are not the same. [Docket no. 66, p. 6]. In support of this claim, EOC also offers a redline comparison of the two

---

[14] This Court notes that these examples are not meant to be the exhaustive list of all instances in which these attorneys spent an excessive or duplicate amount of time on the same work.

[15] This Court does not rely solely upon the figures proposed by the Board; rather, this Court independently has calculated time spent on each "objection category" and put forth its calculations in support of each category.

complaints, pointing explicitly to time spent on a 5-page affidavit "specifically tailored for this matter." [Exhibit no. 66-1].

This Court has calculated the time spent by EOC's lawyers on the Complaint, as follows:

Steven Wilson:      4.6 hours @ $375/hour = $1,725.00
Michael Bentley:    8.1 hours @ $325/hour = $2,632.50
Michael Douglas:    27.5 hours @ $225/hour = $4,522.50

The total amount of fees for the hours spent completing this task equal $10,545.00. Upon review of the two complaints, this court finds that sufficient similarities exist between each to warrant a reduction of hours billed for this task.

The Affidavit of Josh Henderson [Docket no. 64-1, p. 40], although purported to be "specifically tailored" to each complaint, appears to be largely duplicative. The most obvious changes made to the Mississippi Complaint and attached affidavit pertain to paragraphs quoting Mississippi statutes relevant to this case. [See Docket no. 66-1].

This court agrees with the Board that the hours billed for this task must be reduced for lack of billing judgment.  Parties seeking attorneys' fees must show the reasonableness of the hours billed and, therefore, are charged with proving that they exercised billing judgment. *Walker v. City of Mesquite,* 313 F.3d 246, 251 (5th Cir. 2002). Courts have also held that an attorney is not entitled to be paid in a case for the work he or another attorney did in some other case. *Liberties Union v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999).

The exercise of billing judgment requires documentation of the fees charged, as well as those written off. *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d 795 (5th Cir. 2006). The *Saizan* Court continued, "[t]he proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, reduction of the award by a percentage intended to substitute for the

14

exercise of billing judgment." *Id.* at 799 (citing *Walker v. Mesquite* 331 F.3d at 251; and *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996).

This court points to several examples showing "block billing" and EOC's lack of billing judgment. For example, Michael Douglas, on June 2, 2016, billed 7 hours for work related to the complaint, as follows:

> Drafting all necessary pleadings for MS Dec Action; Correspondence with local counsel regarding same – 2.7 hours.

> Drafting all necessary Pro Hac Documents for MS Dec. Action – 0.8 hours.

> Drafting revisions to Complaint for Declaratory Judgment and supporting brief – 1.6 hours.

> Research into MS case law and statutory authority necessary to support brief in support of Declaratory Judgment action – 1.9 hours.

[Docket no. 64-2, p. 35]. At the rate of $225 per hour, Mr. Douglas billed $1,575 under this task category alone.

This court further finds that since EOC had the benefit of a similar pleading and affidavit, EOC's claim for 40.2 hours spent on the filing of this Complaint is not justified; accordingly, this category of time billed warrants a reduction of fifty percent, or **$5,272.50**.

    b) EXTENSION: "Michael Douglas, Steve Wilson, and Michael Bentley spent nearly two hours discussing the Board's request for additional time to answer the complaint among themselves and with the Board's counsel. These entries are marked with the letter "E"."

As mentioned *supra*, EOC has retracted its request for attorneys' fees for this task, which deals with the request for an extension of time, as follows:

> Steven Wilson:    1.5 hours @ $375/hour = $562.50
> Michael Douglas:    0.4 hours @ $225/hour = $90.00

This court, therefore, accepts EOC's withdrawal and recognizes that EOC's lodestar amount should be reduced by **$652.50**.

c) CASE MANAGEMENT: "Between August 5, 2016, and September 22, 2016, these same three attorneys spent a combined 28.3 hours on tasks and discussions related to initial case management matters (including reviewing the Initial Order, the attorney conference, confidential memorandum to the Court, Case Management Order, and case management conference). These hours total $7,017.50 in billing. The confidential memorandum alone consumed 10.1 hours, for a total of $3,387.50.  These entries are marked "CM" for case management."

EOC defends its time entries for this category, alleging, "[i]mportant decisions are made at these conferences" and attorneys "should prepare for them carefully" by anticipating the many issues that might arise later in litigation. *Federal Practice Maul for Legal Aid Attorneys*, § 6.1 (2015 Supp.). While this court agrees that it is prudent legal practice to be prepared, it finds the time spent on this task to be excessive.

This court has identified the time expended on this task category, as follows:

| | |
|---|---|
| Steven Wilson: | 2.5 hours @ $375/hour = $937.50 |
| Michael Bentley: | 6.5 hours @ $325/hour = $2,112.50 |
| Michael Douglas: | 19.3 hours @ $225/hour = $4,342.50 |

The total amount sought is $7,392.50. For time entries marked "CM" in the attached exhibit, this court finds several compounded entries, which amount to further "block billing".  For example, Michael Douglas billed 2.2 hours on September 19, 2016 for the following:

Prepared for and attended Case Management Conference in accordance with Court's Order; Correspondence to client regarding same; Reviewed Case Management Order.

[Docket no. 64-2, p. 39]. This court recognizes that this category included attending conferences as well as research and document preparation; however, it finds the number of hours claimed to be unjustifiable, especially considering this court's inability to clearly decipher the exact time spent on "Case Management". Accordingly, this court reduces the requested amount for this category by 60% or **$4,432.50**.

16

d) PROTECTIVE ORDER: "Michael Bentley and Michael Douglas dedicated nearly nine hours of work on an unopposed motion for protective order and proposed protective order, billing a total of $1,807.50. These entries are marked "P" on the attached time sheets."

The Board, answers EOC, minimizes the importance of a protective order in this litigation. In support of the time spent on this task, EOC contends, "the protection of a commercially-sensitive information is so important that it would often be better for a corporation to not litigate at all rater than lose control of the information. *E.g.*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 n.43 (11th Cir. 1997) (noting that economic harm from disclosing proprietary information is often worse than a default).

This court has determined that the total amount sought for work related to the unopposed protective order, is $1,930.00, as indicated by the time entries:

| | |
|---|---|
| Michael Bentley: | 0.3 hours @ $325/hour = $97.50 |
| Michael Douglas: | 8.1 hours @ $225/hour = $1,822.50 |

Of the 8.1 hours billed by Michael Douglas on this task, this court finds that 4.7 hours should be discredited, in light of the "unopposed" nature of this protective order and failure to specify, with adequate details, the work conducted[16].  Applying this reduction, the court finds that the amount of fees sought should be decreased by **$1,057.50**.

e) CLIENT UPDATES: "The Board has identified forty time entries marked "U" for update, in which Michael Douglas engaged in updates, conference calls, or other communications with his client. This number does not include entries in which Mr. Douglas was clearly consulting with the client in order to perform necessary work on the litigation, such as responding to discovery. Such time expended upon excessive conferences between counsel and client should be disallowed or reduced along with other non- efficient or duplicative expenditures of time."

---

[16] For example, on May 1, 2017, Stephen Wilson billed 0.5 hours for "Emails regarding Motion for Protective Order; reviewing same." [Docket no. 16-2, p. 14].

EOC counters that Mr. Douglas had an ethical obligation to "keep the client reasonably informed about the status of the matter" and "consult with the client about the means by which the client's objectives" were to be accomplished. Model R. Prof'l Conduct 1.4.  Mr. Douglas claims to have spent this time "providing key updates and advice, gathering critical information for use in the litigation, and developing and recalibrating a litigation strategy that required substantive client input." [Docket no. 66, p. 8, part 4].

 The court identifies the following time entries pertaining to this category:

Michael Douglas:   22.8 hours @ $225/hour = $5,130.00[17]

The most prevalent examples of "block billing" in the time entries before this court consist of those in which Mr. Douglas adds "telephone conference/correspondence with client regarding same", along with some other billed activity.  For example, 3.4 hours billed on June 2, 2016 for:

> Completed and filed all pleadings for Declaratory Judgment Action; correspondence with local counsel regarding same; *Telephone conference with client regarding same*."

 [Docket no. 64-2, p. 35](emphasis added). In another example, Mr. Douglas billed 2.1 hours August 8, 2017 for:

> Reviewed Notice of Pre-Trial Hearing, Trial Setting and Instructions; Drafted outline of same; *Correspondence to client regarding same*.

[Docket no. 64-2, p. 62].  Mr. Douglas fails to allocate exact time spent discussing matters with his clients, via telephone or by written communication.  This court, therefore, finds that Mr. Douglas' time submitted for this entry should be reduced by 60% or **$3,078.00**

> f) DISCOVERY/DISCOVERY RESPONSES: "After initial disclosures, the discovery in this matter consisted…of twenty interrogatories and seven requests for production of documents propounded by Tire Engineers, and ten interrogatories, thirteen requests for production of documents, and three requests for admissions propounded by the Board. …Michael Douglas, with minimal assistance from Michael Bentley and Simon Bailey,

---

[17] This Court does not consider those time entries marked as both "Q" and "U" under this category.

> spent 29 hours propounding discovery (including reviewing the Board's responses), and 41.2 hours responding to the Board's discovery requests. The total billing for all of this non-expert-related discovery amounts to $15,795.  Entries indicating time spent propounding discovery are marked 'D', and entries for time spent responding to discovery are marked 'DR'."

EOC responds that this time was spent prudently, as "[c]ounsel oversaw the diligent search for documents and reviewed documents to determine whether they were responsive to the discovery. The parties exchanged 651 pages. Interrogatory responses had to be carefully prepared because the litigation in Mississippi was likely be repeated in other states, particularly if state regulators had prevailed in banning Tire Engineers' ability to brand its services using its service mark." [Docket no. 66, p. 9, part 5].

Upon conducting this review, this court found the following time billed by three attorneys:

| | |
|---|---|
| Steven Wilson: | 0.5 hours @ $375/hour = $187.50 |
| Michael Bentley: | 2.8 hours @ $325/hour = $910.00 |
| Michael Douglas: | 70.5 hours @ $225/hour = $15,862.50 |

Despite the Board's contention that Mr. Douglas was assisted by Simon Bailey, this Court finds no record of Mr. Bailey's input under this category in EOC's time submissions. The total amount sought for work related to discovery and discovery responses is $16,960.00.

This amount is not supported by EOC's time submissions. For example, Michael Bentley billed 0.2 hours on April 4, 2017 for "preliminary review of Tire Engineer's discovery responses." [Docket no. 64-2, p. 13]. Michael Douglas, in another example billed 2.7 hours on March 2017 for "continued review of client documents in preparation of document discovery." [Docket no. 64-2, p. 50].  This court, therefore, must reduce the submitted time entries for time spent on this task by 50%, or by **$8,480.00.**

g) SUMMARY JUDGMENT: "During the summary judgment phase of the case, Tire Engineers submitted sixty-two pages of briefing, including its own motion and memo supporting summary judgment, its response opposing the Board's motion for summary judgment, the reply brief supporting its motion for summary judgment, and the supplemental brief. Michael Douglas spent a total of 107.2 hours, or $24,120, in billing on this summary judgment briefing. Michael Bentley, Simon Bailey, and Spence Morano contributed approximately 12.6 additional hours to the summary judgment briefing on behalf of Tire Engineers. Particularly given Tire Engineers's previous experience arguing the issues presented in this case, the ratio of nearly 2 hours per page seems above average. Entries reflecting time spent on summary judgment briefing are marked 'SJ'."

EOC points out that this case did not proceed to trial; therefore, "the critical, outcome-determinative event in the district court was the summary judgment proceeding, and the court's summary judgment order was appealed to the Fifth Circuit". [Docket no. 66, p. 9]. Excluding exhibits, says EOC, the parties exchanged more than 216 pages of summary judgment-related briefing, including motions to strike or otherwise exclude summary judgment evidence and supplemental briefing requested by this court.

| | |
|---|---|
| Steven Wilson: | 0.5 hours @ $375/hour = $187.50 |
| Michael Bentley: | 14.1 hours @ $325/hour = $4,582.50 |
| Michael Douglas: | 87.4 hours @ $225/hour = $19,665.00 |

The total amount sought is $24,435.00[18].

This court has reviewed the submitted time entries and finds this time to be disproportionately inflated. For example, on the same day, April 17, 2017, Michael Douglas presents four different time entries for the following:

Drafted affidavit for Josh Henderson to submit in support of Motion for Summary Judgement- 1.6 hours.

Drafting Motion for Summary Judgment – 4.8 hours.

Research into necessary Mississippi case law to support Motion for Summary Judgment- 2.6 hours.

---

[18] This Court, once again, does not find any time submitted by Simon Bailey under this category; instead, this Court has identified time by Steve Wilson. This Court also excluded any time submitted by Spence Morano for reasons explained *infra*.

Reviewed MS representative deposition transcript for testimony necessary to support Motion for Summary Judgment – 1.3 hours.

[Docket no. 64-2, p. 53]. According to Mr. Douglas, then, he spent more than 10 hours on this task on this particular day and should be compensated the amount of $2,317.50 for these four entries alone. Mr. Douglas had, a few days prior to this time submission, already submitted a request for $1,395.00 for "Drafting Motion for Summary Judgment" *Id*.

This court cannot find these time entries to be reasonable. Accordingly, this court finds that the time requested for this task should be appropriately reduced by 50%, or **$12,217.50**.

h) APPEAL TO FIFTH CIRCUIT: Four lawyers worked 117.9 hours, marked as "AB" on the time sheets, at a total cost of $32,757.50 to prepare Tire Engineers's fifty-two-page initial appellate brief.

| | |
|---|---|
| Michael Bentley: | 62.3 hours @ $325/hour = $20,247.50 |
| Simon Bailey: | 34.6 hours @ $225/hour = $7,785.00 |
| Michael Douglas: | 20.1 hours @ $225/hour = $4,522.50 |

The total amount sought is $32,555.00[19].

Preparing and filing Tire Engineers's thirty-one-page reply brief, including time used to review the Board's brief and an amicus curiae brief supporting the Board, consumed 71.4 hours of attorney time, billed at a combined $19,815 and marked "RB".

| | |
|---|---|
| Michael Bentley: | 37.5 hours @ $325/hour = $12,187.50 |
| Simon Bailey: | 6.5 hours @ $225/hour = $1,530.00 |
| Michael Douglas: | 27.1 hours @ $225/hour = $6,097.50 |

The total amount sought is $19,815.00.

…[F]our of Tire Engineers's lawyers spending an alleged whopping 151.8 hours preparing for the Fifth Circuit oral argument, billed a total of $39,007.50, as marked "OAP":

---

[19] Spence Morano also billed $202.50, which amount has already been reduced from the lodestar calculation, as further explained *infra*.

| | | |
|---|---|---|
| Michael Bentley: | 44.4 hours @ $325/hour = $14,430.00 | |
| Simon Bailey: | 4.9 hours @ $225/hour = $1,102.50 | |
| Joe Leak: | 28.5 hours @ $250/hour = $7,125.00 | |
| Michael Douglas: | 77 hours @ $225/hour = $17,325.00 | |

The total amount sought is $39,982.50.

This court calculates the total amount requested for EOC's appeal to the Fifth Circuit is $92,325.50. Recognizing that EOC's attorneys spent adequate time preparing for and ultimately winning the Fifth Circuit Appeal, this court, nonetheless, disagrees with EOC's assertion that it has submitted "detailed time records describing what each attorney did in [this] novel and complex case." [Docket no. 66, p. 10]. This court points to its examples *supra* to discredit EOC's postulation. There are several other examples of "block billing" related to appellate work, such as the following by Michael Douglas on December 3, 2018:

> Travel to New Orleans for Appellate Arguments; Meeting with local counsel regarding Appellate Arguments.

[Docket no. 64-2, p. 88]. Mr. Douglas does not specify what amount of time was spent traveling, or what constitutes "meeting with local counsel…"

This court, therefore, finds this amount should be reduced by 30% or **$27,705.75**.

For the reasons stated above, this court finds that EOC's requested attorney fees must be reduced to account for excessive and duplicative time, as well as time billed as "block billing". The total amount of necessary reductions to the lodestar, at this juncture, is **$62,243.75.00**[20].

---

[20] This amount does not include the $652.50 voluntarily withdrawn by EOC for category "E".

## 2.  Pre-Litigation Fees

The Board next asks the Court to disallow "pre-litigation" fees from the lodestar. As a result, the Board asks that the $12,642.50 for time spent in administrative activities and discussions be deducted from the fee award in this case. The following hours are identified by the Board, and verified by this court, as "pre-litigation" fees:

Steve Wilson:          23.6 hours @ $375/hour = $8,850
Michael Bentley:      6.2 hours @ $325/hour = $2,015
Michael Douglas      7.9 hours @ $225/hour = $1,777.50

EOC does not specify the number of hours spent on pre-litigation matters; instead, EOC's submitted time sheets contain general descriptions regarding hours expended prior to the commencement of action for declaratory judgment. For example, Stephen Wilson billed 2 hours on February 10, 2016 for:

Emails regarding Mississippi trade name issues; telephone conference with M. Douglas regarding same; reviewing Texas arguments regarding same; emails regarding same.

[Docket no. 64-2, p. 1].

Michael Bentley, on the next day, February 11, 2016, billed 0.5 hours for:

Conference with S. Wilson regarding background on dispute regarding use of trademark in Mississippi and strategy for approaching Attorney General's Office regarding opinion.

[Docket no. 64-2, p. 1].  Stephen Wilson billed 3.5 hours on March 17, 2016 for:

Reviewing Texas brief in preparation for meeting with Mississippi Attorney General's office; meeting with office attorney and M. Douglas regarding meeting with Attorney General's office; meeting with H. Pizzetta and Onetta Whitley of Mississippi Attorney General's office; emails regarding same; telephone conference with client regarding same.

[Docket no. 64-2, p. 7]. At the rate of $375 per hour, this time entry accounts for $1,125.00.

In support of its attack on EOC's request for pre-litigation fees, the Board points to *Webb v. Board of Education of Dyer County, Tennessee*, 471 U.S. 234 (1985). [Docket no. 64, pp. 16-17].

23

In *Webb*, the prevailing plaintiff in the settlement of a § 1983 case challenging his employment termination sought reimbursement for hours spent by his attorney in administrative proceedings before the school board, where such administrative proceedings had occurred before the initiation of his § 1983 lawsuit. *Id.* The Court found that because no requirement existed that a plaintiff must exhaust available administrative remedies before pursuing a § 1983 action, the plaintiff was free to "go straight to court," and the school board proceedings did not have an "integral function" to the litigation as recognized in the context of Title VII. *Id.* at 241. The Court acknowledged that some services performed before the formal commencement of litigation may be considered time "reasonably expended on the litigation." *Id.* at 243. "Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Id.* The Court, however, affirmed the district court's disallowance of the entirety of counsel's time spent on the administrative work, because there was no demonstration that "any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation." *Id.*

EOC, in turn, contends that "a court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *N. Carolina Dep't of Transp.v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) (citing several cases, including *Webb*); *see also Sullivan v. Hudson*, 490 U.S. 877, 888–89 (1989) (allowing recovery of non-litigation fees in an administrative process that was "crucial" to the vindication of the plaintiff's rights). The question is not whether the fees are incurred in an "administrative" matter, says EOC, but rather if the fees are incurred in the course of "a necessary precursor to the filing of a lawsuit." *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993).

This court agrees with the Board that the pre-litigation proceeding before the Board was not a a necessary precursor to this declaratory judgment action. There was no statutory requirement for EOC to pursue state administrative remedies before commencing proceedings for a declaratory judgment in this federal forum.

EOC is correct in its contention that a declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *See* 28 U.S.C. § 2201(a) ("In a case of *actual controversy* within its jurisdiction ... any court of the United States ... may declare the right and other legal relations of any interested party seeking such declaration.") (emphasis added); *Texas v. West Publ'g. Co.,* 882 F.2d 171, 175 (5th Cir.1989). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests."  *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (quoting *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

Although EOC contends that probability of adverse state action did not ripen into an immediate threat—*i.e*., change from a request to a demand—until the Board made a conclusive determination in May 2016 to impose a "total ban" on the company's name [Docket no. 1-4], EOC fails to offer a sufficient basis upon which it would have been unable to file suit prior to this juncture.

This court, obedient to the reasoning in *Webb*, holds that some services performed before formal commencement of litigation may be considered time "reasonably expended on the litigation".  These entries have been properly accredited to EOC. For example, the following are examples of time entries for pre-litigation work by Michael Bentley, which this court deems "reasonably expended on the litigation" [21].

---

[21] This court notes, however, the "block billed" nature of these time entries and reviews them accordingly.

Emails regarding Board of Engineers correspondence; reviewing same; telephone conference with M. Douglas regarding same; telephone conference with office attorney regarding declaratory judgment action – 0.8 hours.

Telephone call with M. Douglas regarding background on presiding judge – 0.2 hours.

Confirm rules for service of process on state agencies; emails with M. Douglas regarding service issues; draft courtesy email to H. Pizzetta regarding declaratory judgment action – 0.7 hours.

Research state's immunity to suits for trademark interference – 0.6 hours.

[Docket no. 64-2, pp. 5-7].

Accordingly, this Court reduces the lodestar amount by **$12,642.50**, for time spent on optional pre-litigation proceedings.

### 3.  Time Spent on Attorney Fee Application

The Board submits that $11,032.50 requested for duplicative attorney time spent in preparation of the fee application should be reduced or deducted from the award of attorneys' fees in this case:

Michael Bentley:      10.2 hours @ $325/hour = $3,315
Simon Bailey:      8.7 hours @ $225/hour = $1,957.50
Michael Douglas      25.6 hours @ $225/hour = $5,760

"The prevailing party on the fee application is entitled to fee compensation for all time reasonably expended in preparing, litigating, and successfully appealing or defending on appeal the fee request." *Cruz v. Hauck*, 762 F.2d 1230, 1233–35 (5th Cir. 1985).  Hours expended by an attorney for work on the attorney fee application itself are completely discretionary, however, and may be completely disallowed by the district court. *See Kellstrom,* 50 F.3d at 336 (affirming district court's discretion to deny fees to work on fee application where applicant "recovered only part of the costs and fees requested").

26

This court finds that EOC's submitted time sheets do not adequately reflect the time claimed to warrant a grant of the full amount requested. As stated above, EOC failed to categorize or identify the different tasks for which it requests compensation; instead EOC submitted general time sheets full of "block billed" time entries.  EOC's time submissions further included several "questionable" entries, as well as entries that were wholly unrelated to the matter at hand, for example, on January 10, 2017, Michael Bentley billed 0.1 hours for:

> Telephone call and emails with A. Kilpatrick regarding status of litigation and Board of Architecture's involvement.

[Docket no. 64-2, p. 11].  Mr. Bentley again billed 0.2 hours on March 22, 2017 for:

> Response to inquiry from A. Kilpatrick, Board of Architect's counsel, regarding status of litigation.

[Docket no. 64-2, pp. 12-13]. In yet another example, Michael Douglas billed 0.7 hours on June 28, 2016 for:

> Correspondence from client regarding TX and MS filings; Confirmed and drafted status updated regarding same.

[Docket no. 64-2, p. 36].  Mr. Douglas does not clarify whether this time entry was spent conversing with his clients from Texas or Mississippi, nor does he explain the relevance of said correspondence to the matter at hand. Having allegedly spent almost 45 hours on the fee application, this court would expect EOC to have caught the many discrepancies and ambiguities in its submissions.

Accordingly, upon reviewing each line item submitted, this court finds that EOC's reasonable attorneys' fees for hours expended on pursuing and litigating its request for attorneys' fees as the prevailing party should be reduced by 60% or **$6,619.50.**

### 4.   Miscellaneous Claims for Fees

The Board points out that one of the attorneys claiming time spent on EOC's case, Spence Morano, never entered an appearance in either this court or the Fifth Circuit appeal in this case. As a result, says the Board, Mr. Morano's charged time – 16.4 hours @ $225/hour = $3,690 – should be deducted from the fee award.

This Court agrees. EOC's attorneys of record are: Michael J. Douglas and John J. Leak, both admitted pro hac vice. [See unnumbered ECF Docket entries for 06/17/2016 and 09/08/2017]; and local counsel Michael J. Bentley, Stephen M. Wilson, and Simon T. Bailey.  Spence Morano is nonetheless listed in EOC's Motion for Attorney's fees:

> "The other attorneys in my firm who billed time to this matter are Joe Leak and Spence Morano… Mr. Morano is a 2001 graduate of Cumberland School of Law at Samford University. He is a shareholder in our firm and a commercial litigator with both trial and appellate experience. Mr. Morano has also worked on several matters for Tire Engineers and is very knowledgeable about the company."

[Docket no. 601-3 at p. 2].  This Court has no record of Mr. Morano being admitted to practice in the Southern District of Mississippi, or that Mr. Morano attempted to enter an appearance in this matter. This Court, therefore, deducts Mr. Morano's time and further reduces the lodestar by **$3,690.00**.

In addition, Michael Douglas 's submitted time sheets reflect time expended by a lawyer with no known association with this case.  Ten (10) of Mr. Douglas's time entries[22] identify a Robert Boliek, Jr. as having apparently conducted the work claimed.  Mr. Boliek is identified as a lawyer in Birmingham, Alabama, referred to as "briefing counsel" by Spence Morano in a May 4, 2017, time entry.  All of the 46.7 hours, or $10,507.50 in fees, sought for work performed by this Robert Boliek, Jr., must be deducted from the fee award.

---

[22] These time entries are dated 5/3/17, 5/5/17, 5/6/17, 5/7/17, 5/8/17, 5/16/17, 9/1/17, 9/11,17, 9/12/17, and 9/13/17.

EOC had an opportunity to clarify these times entries, from an unknown attorney, of whom there has been no mention throughout this litigation. EOC failed to address the Board's attack; further, there has been no representation made to this court that Mr. Boliek is qualified to practice in the Southern District of Mississippi, or that Mr. Boliek attempted to enter an appearance in this matter.   Accordingly, this court finds that the 46.7 hours, or **$10,507.50** in fees, sought for work performed by Robert Boliek, Jr., must be deducted from the fee award.

Lastly, this court accepts EOC's voluntary reductions of **$16,320.00** for time entries related to travel, and **$4,535.00** for miscellaneous time entries marked as "Q for "questionable" in the attached exhibit.

This court has reviewed the reasonableness of the hours charged by determining, if, "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir. 1992). This court finds that EOC may have acted reasonably; however, this court cannot find that EOC has provided evidence of its attorney fees with the specificity required. This court, therefore, is persuaded to reduce the lodestar fee by **$102,322.75**, not including EOC's voluntary reduction of $21,507.50.

Accordingly, this court finds that the appropriate lodestar calculation for this matter is **$192,532.25**[23].

After having determined the lodestar fee, this court must apply the *Johnson* factors. In reviewing the *Johnson* factors, this court is convinced that no further reduction nor any increase of the lodestar is necessary, or appropriate for the reasons *infra*.

---

[23] This amount is obtained by subtracting $102,322.75 from EOC's amended proposed lodestar of $294,855.00.

## B. <u>Adjustment of the Lodestar Calculation</u>

The Fifth Circuit has clearly stated the scope of the *Johnson* factors is narrowed because "the trial court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir. 1993). The *Shipes* court further expounded, "[f]our of the factors – the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation – are presumably fully reflected in the lodestar amount." *Id.*

This court additionally is persuaded that the present lodestar calculation accurately reflects and takes account of: whether the fee is fixed or contingent; the customary fee for similar work in the community; and the experience, reputation, and ability of the attorneys. This court already has determined that the expended time and labor, as set forth in the documentation and affidavits of EOC's counsel fail to reflect sound billing judgment for each task performed by EOC's attorneys. This court finds the remaining *Johnson* factors: the nature and professional relationship with the client; awards in similar cases; the preclusion of other employment; time limitations imposed by the client or the circumstances; and the undesirability of the case do not contribute in any meaningful way to the addition or reduction of this court's lodestar calculation.

## IV.    CONCLUSION

EOC, as the proper prevailing party under §1988, requested $316,362.50 in attorneys' fees by way of its Motion for Attorneys' Fees [Docket no 60]. The Board, without proposing an alternative figure, urged this Court to limit EOC's attorneys' fees to no more than $100,000.00. [Docket no. 62].

This court is convinced, after reviewing the billing of EOC's attorneys and applying EOC's voluntary reductions to its proposed lodestar amount, that EOC's lodestar must be further reduced to $192,532.25. This court finds no further reductions or adjustments to this figure after applying the *Johnson* factors.

IT IS, THEREFORE, ORDERED AND ADJUDGED that EOC's *Motion for Attorneys' Fees* **[Docket no. 60]** is hereby GRANTED, with reductions, and that EOC is entitled to attorneys' fees in the amount of **$192,532.25**.

**SO ORDERED AND ADJUDGED** this the 14th day of December, 2020.

**/s/HENRY T. WINGATE**
UNITED STATES DISTRICT COURT JUDGE